UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER SCOTT NICKERSON,

                Petitioner,

                                Civil Case No. 14-14725

v.                              Honorable Linda V. Parker

LORI GIDLEY,

                Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF
APPEALABILITY**

Petitioner Christopher Scott Nickerson ("Petitioner") has filed a petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254, through his attorney, David A.

Dodge.  Petitioner is challenging his conviction in the Circuit Court for Oakland

County, Michigan, for assault with intent to commit murder,[1] felon in possession

of a firearm,[2] felony firearm,[3] and being a third felony habitual offender.[4]  For the

reasons stated below, the Court is denying the petition for writ of habeas corpus.

---

[1] Michigan Compiled Laws § 750.83.
[2] Michigan Compiled Laws § 750.224f.
[3] Michigan Compiled Laws § 750.227b.
[4] Michigan Compiled Laws § 769.11.

# I.     Background

Petitioner was convicted of the above-listed offenses following a jury trial, in which he was tried jointly, but by separate juries, with his co-defendant, Marc McArthur.  His convictions were affirmed on direct appeal.  *People v. Nickerson*, No. 308060, 2014 WL 265509 (Mich. Ct. App. Jan. 23, 2014) (unpublished).

The relevant facts relied upon by the Michigan Court of Appeals when affirming Petitioner's convictions are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).  Those facts are:

> Defendants' convictions arise from a failed armed robbery plan at a motel in Madison Heights, Michigan, on October 26, 2010.  The intended victim, Saud Shinko, met Constance Hazelett at the motel, with the intention that they would consume alcohol and drugs, and possibly engage in sex.  However, Hazelett had made plans with defendant Nickerson for Nickerson to come to the motel to rob Shinko of his drugs and money.  Defendant McArthur, who belonged to the same motorcycle club as Nickerson, also went to the motel that night with Noah Smith, the getaway driver.  As the evening progressed, Shinko grew suspicious after noticing men sitting in a car about five or six rooms away and Hazelett repeatedly texting and talking on her cellular telephone.  Shinko called the front desk and was connected to the police.  Meanwhile, the two defendants approached the motel room and knocked on the door.  When Hazelett went over to open it, Shinko stopped her.  Defendants eventually stopped knocking and fled in a Chrysler 300, apparently because the police had arrived.

> After a short police pursuit, defendants' vehicle crashed into a cement wall that separated the motel from a wooded area.  According to witnesses at trial, Smith remained in the car, McArthur exited the back seat and fled into the woods, and Nickerson exited the front passenger seat and discharged a firearm five or six times at a pursuing

police sergeant, Sergeant Pawlowski, before also fleeing into the
wooded area. Nickerson was arrested at a hotel adjacent to the motel
and the wooded area, and a police dog was used to locate McArthur,
who was hiding in heavy brush in the wooded area.  The police
recovered a .38 caliber revolver approximately 10 feet from where the
car crashed.  In an elevator of the hotel where Nickerson was arrested,
the police recovered a .380 caliber Caltech handgun, which was
missing one round, a black hooded jacket, a black and white bandana,
and a folding knife.  Also in the woods, about six feet from where
McArthur was found, the police recovered a baggie of cocaine, a
black and white bandana, and a holster. A .22 caliber pistol was found
about 14 feet from where McArthur was found.  Later, the police
located a .357 magnum handgun and a knife in the wooded area; these
items were about six to eight feet from where the other items had been
found.  The police determined that the .357 Magnum was the weapon
that was fired at the officer, and the prosecutor's theory at trial was
that Nickerson shot at the officers and later handed off the gun to
McArthur as the men were running from the police.

* * *

At trial, two witnesses—Hazelett and Pawlowski—identified
defendant Nickerson as the person who fired several shots toward
Pawlowski's patrol car.  Pawlowski testified that he observed
defendant Nickerson, who had a distinctive "Mohawk" style haircut,
in the front passenger seat of the Chrysler.  According to Pawlowski,
the lighting conditions in the area were "really good."  After a very
brief pursuit, the Chrysler crashed into a wall and the sergeant stopped
his patrol car about six to ten feet from the Chrysler's back bumper.
Pawlowski observed defendant Nickerson exit from the front
passenger seat of the Chrysler, raise two handguns, hold them straight
out in front of him, and point them toward his patrol car.  Pawlowski
took cover and immediately heard five or six shots in rapid
succession.  Pawlowski was positive that defendant Nickerson was the
person who shot at him, and testified that defendant Nickerson "was
the only person pointing guns at him."

Hazelett also testified that she saw defendant Nickerson
"shooting his gun" at a police car.  She observed defendant Nickerson
with his hands straight out, pointing a gun at a police car, and heard

3

five or six shots. From her angle, she observed defendant Nickerson's "whole left side," so she saw the "whole left side of his face," his haircut, and him shooting a gun.  Although defendant Nickerson notes the inconsistent witness testimony concerning the number of guns he held, a jury could reasonably infer that Hazelett saw only one gun because she saw only defendant Nickerson's left side.  Further, Hazelett explained that she had spent time with defendant Nickerson on four or five occasions, and had a sexual relationship with him "a couple of times."  From this evidence, a jury could reasonably infer that Hazelett was familiar with defendant Nickerson, thereby enhancing the reliability of her identification testimony.

*Nickerson*, 2014 WL 265509, at *1, 2-3 (brackets removed).

On December 15, 2014, Petitioner filed his petitioner for the writ of habeas corpus.  Petitioner asserts the following grounds in support of his request for habeas relief:

I.  The Petitioner was denied his constitutional right to be represented by an effective lawyer, pursuant to U.S. Constitution, Am. VI, when his prior attorney failed: 1) to meaningfully test the People's evidence about gunshot residue testing; and 2) to properly investigate and persist in the investigation/disclosure of potentially critical exculpatory evidence, instead, abandoning the investigation at an unreasonable juncture.

II.  The Petitioner was denied his federal constitutional due process rights to confront witnesses and establish a witness' inducement and motive to testify because of the trial court's instructions to the jury over the Petitioner's objection concerning Constance Hazelett's plea-bargained consideration from the prosecution regarding her testimony.

4

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrived at a conclusion opposite to that reached by the Supreme Court

on a question of law or decided a case differently than the Supreme Court has on a

set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's

case."  *Id.* at 409.  A federal habeas court may not "issue the writ simply because

that court concludes in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or incorrectly."  *Id.* at

410-11.

The Supreme Court has explained that "a federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

The Supreme Court has advised that "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 562 U.S. at 102. Although

6

§ 2254(d), as amended by AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the federal court's authority to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102-03 (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  In order to obtain habeas relief in federal court, a state prisoner therefore must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III.  Discussion

### A.  Ineffective Assistance of Counsel Claim

Petitioner claims that his trial counsel was ineffective for failing to request gunshot residue testing on the clothing he and his co-defendant, McArthur, were wearing on the night of the shooting.  Petitioner claims such testing could have

7

shown the absence of gunshot residue on his clothing and the presence of gunshot

residue on McArthur's clothing.  As such, Petitioner claims such testing would

have demonstrated that he was not the individual who shot at Sergeant Pawlowski.

The Michigan Court of Appeals rejected Petitioner's claim, reasoning:

> Defendant Nickerson's and codefendant McArthur's clothing were not tested for gunshot residue, and the clothing apparently was in the custody of the police because both defendants were arrested contemporaneously with their charged conduct.  Gunshot residue testing was performed on defendant Nickerson's and codefendant McArthur's hands and faces.  No gunshot residue particles were found in the samples taken from defendant Nickerson.  A single particle of gunshot residue was found in the sample taken from codefendant McArthur's left hand.  Defendant Nickerson now argues that had defense counsel ensured that the clothing was tested, it would have proven that defendant Nickerson was not the shooter, who therefore "must have been" codefendant McArthur.

> Decisions about defense strategy, including what evidence to present, and how to argue the case, are matters of trial strategy . . . Defendant Nickerson has not overcome the strong presumption that defense counsel chose not to pursue gunshot residue testing on the clothing as a matter of trial strategy.  The defense was initially armed with results from gunshot residue testing that revealed that no residue was detected on defendant Nickerson's hands or face, and that a single particle was detected on codefendant McArthur's left hand.  Those test results arguably pointed to codefendant McArthur as the shooter and also supported defendant Nickerson's theory that he did not shoot a gun because no residue was detected on his hands.  Defense counsel was also aware, however, that two eyewitnesses, one a police sergeant, had identified defendant Nickerson as the shooter.  Defense counsel could have made the objectively reasonable decision to proceed with the favorable results in hand, and not risk producing inculpatory evidence by testing Nickerson's clothing as well.  The reasonableness of counsel's decision is supported by the forensic expert's testimony that the absence of particles does not mean that the person did not fire a weapon, and thus, that testing is not conclusive.

8

Had defense counsel pursued testing of the clothing and also obtained favorable results, that evidence would have been cumulative to the prior test results. An unfavorable result, however, would have been more damaging to the defense than obtaining cumulative evidence would have been helpful. Under these circumstances, defendant has not overcome the presumption that defense counsel's decision constituted reasonable trial strategy, and "this Court will not second-guess defense counsel's judgment on matters of trial strategy."

Moreover, defendant Nickerson cannot demonstrate a reasonable probability that, but for counsel's failure to pursue the testing, the result of the proceedings would have been different. Again, the forensic expert explained that a negative test result does not mean that the person did not fire a gun. Moreover, two eyewitnesses identified defendant Nickerson as the gunman, and neither witness saw codefendant McArthur with a gun or shooting a gun. Considering the testimony of the two eyewitnesses and the forensic expert, defendant Nickerson has not established a reasonable probability that testing of the clothing would have affected the outcome of the trial. Consequently, the record does not support this ineffective assistance of counsel claim.

*Nickerson*, 2014 WL 265509, at *6-7 (internal citations omitted). The Michigan Court of Appeals' decision is neither contrary to, nor an unreasonable application of, clearly established federal law. The state court also did not base its decision on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial.

A habeas petitioner asserting the denial of the effective assistance of counsel must satisfy a two-prong test. First, the petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that "counsel was not functioning as the 'counsel' guaranteed by the Sixth

9

Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To make this

showing, the petitioner must overcome "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance[.]"  *Id*. at

689.  In other words, the petitioner "must overcome the presumption that, under

the circumstances, the challenged action might be considered sound trial strategy."

*Id*. (internal quotation marks and citation omitted).  Second, the petitioner must

show that counsel's deficient performance prejudiced his defense.  *Id*. at 687  To

demonstrate prejudice, the petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id*. at 694.  "*Strickland* places the burden

on the defendant, not the state, to show a 'reasonable probability' that the result [of

the proceeding] would have been different[,]" but for counsel's allegedly deficient

performance.  *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Notably, on habeas review, "[t]he question 'is not whether a federal court

believes the state court's determination' under the *Strickland* standard 'was

incorrect but whether that determination was unreasonable-- a substantially higher

threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v.*

*Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state

court's application of the *Strickland* standard was unreasonable.  This is different

from asking whether defense counsel's performance fell below *Strickland's*

10

standard." *Harrington*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Under the standard of review set forth in § 2254(d)(1), "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* "Surmounting *Strickland's* high bar is never an easy task." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Finally, a reviewing court does not simply consider the explanation for the conduct given by the allegedly deficient attorney. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011). A habeas court must also "affirmatively entertain the range of possible reasons [the petitioner's] counsel may have had for proceeding as [he or she] did." *Id*. (internal quotation marks and citation omitted).

As part of his ineffective assistance of counsel claim, Petitioner argues that he was constructively denied the assistance of counsel due to his attorney's alleged omissions in the trial court and that prejudice to his case therefore should be presumed. In other words, Petitioner contends he should not have to show that he was actually prejudiced by counsel's inactions to obtain habeas relief.

In "very limited circumstances" an irrebuttable presumption of prejudice arises in an ineffective assistance of counsel claim. *United States v. Cronic*, 466

11

U.S. 648, 646 (1984).  Where defense counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," there has been a constructive denial of counsel and a defendant need not make a showing of prejudice to establish ineffective assistance of counsel.  *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002) (citing *Cronic*, 466 U.S. at 659).  Such a presumption arises where a defendant "is denied counsel at a critical stage of his trial."  *Cronic*, 466 U.S. at 659.  Counsel must be "either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."  *Id*.  *Cronic's* presumption does not apply to Petitioner's claim for two reasons.

First, Petitioner never raised a claim in the state courts that he was constructively denied the assistance of counsel.  As a general rule, a state prisoner seeking federal habeas relief must first exhaust available state court remedies before raising a claim in federal court.  28 U.S.C. § 2254(b), (c); *Picard v. Connor*, 404 U. S. 270, 275-78 (1971); *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005).  Exhaustion for purposes of federal habeas review requires that a claim be "fairly presented" to the state courts, meaning that it is asserted "under the same theory in which it is later presented in federal court."  *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004).

In the state courts, Petitioner did not argue that the *Cronic* presumed prejudice standard applied to his case.  (*See* ECF No. 6-15 at Pg ID 797-801.)

12

Instead, he employed the *Strickland* standard when arguing trial counsel's

ineffectiveness.  "While both *Cronic* and *Strickland* concern Sixth Amendment

violations, they are distinct legal claims and the difference between the two 'is not

of degree but of kind.' " *Fusi v. O'Brien*, 621 F.3d 1, 6 (1st Cir. 2010).  As the First

Circuit explained:

> *Strickland* requires a case-by-case analysis of whether counsel's
> deficiencies affected the outcome of a trial, while *Cronic* permits a
> presumption of prejudice if an actual or constructive denial of counsel
> occurs during a critical stage of the trial.  These claims, while based
> on similar factual underpinnings, are separate and distinct.  A
> defendant's reliance on one theory in state court does not exhaust the
> other.

*Id.*  As such, Petitioner's constructive denial of counsel claim was not exhausted

with the state courts. *Id.*

Second, *Cronic* is not applicable to Petitioner's claim.  The *Cronic*

presumption "applies only where defense counsel completely or entirely fails to

oppose the prosecution throughout the guilt or penalty phase as a whole." *Benge v.

Johnson*, 474 F.3d 236, 247 (6th Cir. 2007) (citing *Bell Cone*, 535 U.S. 685 697

(2002)).  The alleged errors of Petitioner's trial counsel did not rise to the level of

the constructive denial of counsel, because counsel actively represented Petitioner

at his trial. *See Moss*, 286 F.3d at 860-62.  Trial counsel participated in voir dire,

cross-examined the witnesses, asserted objections, presented a defense, and made

opening and closing arguments.  The presumption of prejudice therefore does not

apply.  As a result, Petitioner must show that he was actually prejudiced by counsel's alleged omissions in order to obtain habeas relief. *Id.*  Petitioner fails to make this showing.

First, Petitioner failed to offer the state courts and has not offered this Court any evidence to suggest that gunpowder testing of his or McArthur's clothing would provide the exculpatory results he claims.  Conclusory allegations by a habeas petitioner, without any evidentiary support, do not provide a basis for habeas relief.  *See, e.g., Washington v. Renico,* 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring an evidentiary hearing in a habeas proceeding); *Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel do not warrant habeas relief).  A habeas petitioner must make more than merely speculative assertions to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  *See Bowen v. Foltz,* 763 F.2d 191, 194 (6th Cir. 1985).

Second, Petitioner cannot overcome the presumption that counsel's decision to forego testing of the clothing for gunshot residue was a valid strategic choice. Petitioner's counsel already had results from gunshot residue testing which showed no residue on Petitioner's hands or face, but the detection of a single particle on McArthur's left hand.  Counsel was able to use these test results to argue that

14

McArthur was the real shooter and that Petitioner never discharged a firearm because no residue was detected on his hands or face. (11/1/11 Trial Tr. at 15; 11/7/11 Trial Tr. at 58-59, 66.) Two eyewitnesses identified Petitioner as the shooter. (11/3/11 Trial Tr. at 270-72; 11/4/11 Trial Tr. at 153-55.) Defense counsel's decision to rely on the gunshot residue tests that he already had, instead of requesting additional gunshot residue testing which may have uncovered evidence further incriminating Petitioner as the shooter, was a reasonable strategy that defeats Petitioner's claim. *See Jones v. Butler*, 778 F.3d 575, 583 (7th Cir. 2015) (holding that the state court did not unreasonably apply *Strickland* in rejecting habeas petitioner's claim that trial counsel was ineffective in forgoing gunshot residue, reasoning that counsel made tactical decision because such additional testing could have proven detrimental to the petitioner while offering little chance to improve his case and the petitioner was able to argue at trial that the absence of such residue on his hands played to his favor and that the prosecution, by neglecting to test a shirt, failed to satisfy its burden of proof).

Finally, Petitioner is unable to establish that he was prejudiced by counsel's failure to pursue the gunshot residue testing because even if the tests had come back negative with respect to Petitioner's clothing, a forensic expert testified at trial that such tests are inconclusive as the absence of gunshot particles does not necessarily mean that the person did not discharge a weapon. (11/1/11 Trial Tr. at

15

70.)  As indicated, two eyewitnesses positively identified Petitioner as the shooter.

In light of the evidence in this case, counsel's failure to request that gunshot

residue testing be performed on Petitioner's and McArthur's clothing did not

prejudice Petitioner.  Therefore, Petitioner is not entitled to habeas relief on his

first claim.

### B.  Jury Instruction Claim

Petitioner next claims that the trial court erred by giving the jury a modified

version of C.J.I. 2d 5.13, which addresses the issue of plea agreements given to

cooperating witnesses in exchange for their testimony.  The modified version

included the sentencing guidelines range that Hazelett would have faced if she had

been convicted as charged of conspiracy to commit armed robbery.

The Michigan Court of Appeals rejected Petitioner's claim, reasoning:

> The trial court instructed the jury on Hazelett's agreement in
> exchange for her testimony as follows:
>
>> You have heard testimony that a witness, Constance Hazelett,
>> made an agreement with the prosecutor in exchange for her
>> testimony in this trial.
>>
>> You have also heard evidence that she faced a possible penalty of life
>> or any term of years as a result of those charges.
>>
>> *Sentencing guidelines in her case were twenty-seven to forty-five
>> months.*  You are to consider this evidence only as it relates to her
>> credibility and as it may tend to show her bias or self-interest.
>
> Defendant Nickerson correctly notes that the emphasized
> language is not part of CJI2d 5.13, but takes an incorrect view of the

16

required usage of the standard jury instructions.  Instructions given by the trial court are not erroneous simply because they do not mirror the standard criminal jury instructions.  The trial court's instructions, as a whole, fairly presented the issue of weighing Hazelett's credibility and bias or self-interest because of the sentencing advantages of her plea agreement offered in exchange for her testimony.  While the modified instruction further clarified Hazelett's particular circumstances, it did not lessen the objective of the instruction, and still included the statement that Hazelett faced potential life imprisonment.  Further, the plea agreement was addressed extensively during trial, and defense counsel argued that the agreement between Hazelett and the prosecution influenced her testimony.

Additionally, the trial court's general instructions on witness credibility also guided the jury in assessing the credibility of Hazelett's testimony.  For example, the jurors were instructed that it was their job to assess witness credibility, and in doing so, they should consider whether the witness has any bias, prejudice, or personal interest in the case, if there have been any promises, threats, or other influences that may have affected how the witness testified, and whether the witness had any special reason to be untruthful.  In sum, the trial court's instructions fairly presented the issues to be tried and sufficiently protected defendant Nickerson's rights.  Accordingly, defendant Nickerson was not denied his due process right to a fair trial.

*Nickerson*, 2014 WL 265509, at *4 (internal citations omitted) (emphasis in original).  This decision also is neither contrary to, nor an unreasonable application of, clearly established federal law.  The Michigan Court of Appeals also did not base its decision on an unreasonable determination of the facts in light of the evidence presented at Petitioner's trial.

" 'The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a

state court's judgment is even greater than the showing required to establish plain error on direct appeal.' " *Hodges v. Parker*, 493 F. App'x 704, 708 (6th Cir. 2012) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). The federal habeas court must ask "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned.' " *Id.* The Supreme Court has warned that the challenged instruction must not be judged in isolation, but instead in the context of the entire jury charge. *Jones v. United* States, 527 U.S. 373, 391 (1999) (citing cases). "Even if there is some 'ambiguity, inconsistency or deficiency' in the jury instruction, such an error does not necessarily constitute a due process violation." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (additional citations omitted)). "Federal habeas courts . . . do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to [the state court's] model. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A habeas petitioner is entitled to relief only where an erroneous jury instruction "had substantial and injurious effect or influence [on the jury's verdict]." *See Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008) (citing *California v. Ray*, 519 U.S. 2, 5 (1996)).

18

The jury instruction given at Petitioner's trial adequately instructed the jurors on the issue of Hazelett's credibility as a witness and alerted the jury to the potential reasons for Hazelett to be biased or for her to have a motive to offer false testimony against Petitioner.  Although the addition of the sentencing guidelines range may have reduced Hazelett's motivation to testify falsely in the juror's minds, the judge also informed the jury that Hazelett had faced a potential life sentence if she was convicted of the conspiracy to commit armed robbery charge. The jurors were advised that they could consider the agreement Hazelett made in exchange for her testimony to assess her credibility.  The general credibility instruction also informed the jurors of the factors they could use to determine Hazelett's credibility, including any motives she might have to offer fabricated testimony.  (*See,* 11/7/11 Trial Tr. at 92-94.)  The Court concludes that the instructions, as given, did not deprive Petitioner of a fair trial.

## IV.  Conclusion

For the foregoing reasons, the Court concludes that Petitioner is not entitled to the writ of habeas corpus and is denying his petition.  The Court also is denying Petitioner a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree

19

that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner fails to make a substantial showing of the denial of a federal constitutional right.  As discussed, Petitioner must show prejudice resulting from his trial counsel's alleged deficient performance as he failed to exhaust his *Cronic* claim in the state courts and *Cronic* is inapplicable in any event.  He cannot show that the failure to conduct gunpowder testing of his and McArthur's clothing prejudiced his defense.  Moreover, he fails to show that counsel's decision to forego such testing was not a valid strategic choice.  Petitioner also fails to show that he was denied a fair trial as a result of the modified jury instruction given in regards to Hazelett's cooperating testimony.

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

20

**IT IS FURTHER ORDERED** that a Certificate of Appealability is

**DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 2, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 2, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

21